## **AFFIDAVIT OF SPECIAL AGENT RANDY R. REEVES**

I, Randy R. Reeves, having been duly sworn, do hereby depose and state as follows:

1.      I am a Special Agent with the United States Immigration and Customs Enforcement ("ICE"), formerly the United States Immigration and Naturalization Service ("INS"), and have been so employed since January 1987. Among other duties, I am assigned to investigate the manufacture and sale of fraudulent Immigration and Naturalization Resident Alien cards, Form I-551 (hereinafter "green cards"). From my training, I know that persons, including aliens, manufacture and distribute counterfeit resident alien cards, social security account number cards (hereinafter "SSANC") and other false documentation. The counterfeit documents are then sold to aliens who are illegally in the United States or who do not have permission to work in the United States. I am familiar with the various criminal statutes pertaining to the enforcement of immigration laws and which make it unlawful to manufacture and sell green cards, including 18 U.S.C. §1028(a) (1)-(6) (producing identification and false identification documents) and 18 U.S.C. §1426(b) (using and selling false naturalization, citizenship and registry documents).

2.      This affidavit is based on my personal knowledge, information provided to me by other law enforcement officers and ICE agents, as well as information provided to me by a confidential source. This affidavit is not intended to set forth all of the information that I and other law enforcement personnel have learned during this investigation, but is submitted in support of an application for a criminal complaint against **Gilberto Lopes NAGIME** and **Cesar L/N/U**, charging them with violating 18 U.S.C. §1028(a)(2) and 18 U.S.C. §1426(b).

## **BACKGROUND**

3.      On April 7, 2005, in the presence of myself and ICE Agent DaCunha, Confidential Source SA-574-BO ("CS 1") placed a consensually monitored and recorded telephone call

1

to "Lopes" at 617-347-1083 in an attempt to purchase fraudulent green cards and social security cards. "Lopes" related that he could provide the fraudulent documents for seventy dollars per document.

4.    On April 11, 2005, in the presence of myself and ICE Agent McCarthy, CS 1 placed a consensually monitored and recorded telephone call to "Lopes" at 617-347-1083 in an attempt to purchase two sets of fraudulent documents. "Lopes" agreed to meet at the Oasis Grill and Restaurant in Lowell, Massachusetts the following day at 1100 hrs.

## FIRST PURCHASE

5.    On April 12, 2005, CS 1 along with ICE Senior Special Agent DaCunha (acting in an undercover capacity), met with ICE agents in Lowell, Massachusetts. SSA DaCunha (hereafter referred to as UCA) agreed to meet "Lopes" with CS 1. CS 1 was provided with two green card style photographs bearing the names Simone FRANCO (d/o/b11-29-72) and Antonio CUNHA (d/o/b 07-16-71). The UCA was provided with a digital recording device. An integrity search of CS 1 was conducted for fraudulent document-related contraband, revealing none.

6.    At approximately 1105hrs, the UCA and CS 1 arrived at the Oasis Grill and Restaurant.

7.    At approximately 1109hrs, the target arrived driving a red Toyota Camry bearing Massachusetts registration 22LM26. The target exited his vehicle and entered the UCA's vehicle.

8.    At approximately 1117hrs, the target exited the UCA's vehicle and subsequently entered his own.

9.    Surveillance followed the target from Lowell, Massachusetts, to Braintree, Massachusetts. Surveillance was terminated due to the fact that the target was lost in the vicinity of Commercial Street and Route 53.

10.    Upon being debriefed, the UCA related that while inside the car, CS 1 handed

2

"Lopes" the green card style photographs. The UCA further related that "Lopes" stated that he could not complete the documents until the following day, and that he would deliver them to the UCA at the Café Belo Restaurant in Somerville, Massachusetts, the following day.

11.    On April 13, 2005, at approximately 1220hrs, the UCA placed a consensually monitored and recorded telephone call to target "Lopes" at 617-347-1083. "Lopes" advised that he would meet the UCA at the Café Belo Restaurant in 20 minutes. The UCA was provided with $140.00 in official funds for the purchase of the documents. The UCA and his vehicle were outfitted with digital and video recording devices.

12.    At approximately 1235hrs, the UCA arrived at the Café Belo Restaurant.

13.    At approximately 1243hrs, the target arrived driving the aforementioned red Toyota Camry. The target exited his vehicle and entered the UCA's vehicle. The video shows the target handing the UCA the fraudulent documents. The video also shows the UCA handing the target the $140.00 in official funds.

14.    At approximately 1247hrs, the target exited the UCA's vehicle and entered his own. The target was observed driving toward Cambridge, Massachusetts.

15.    Upon being debriefed, the UCA related that the actual price for the two sets of documents was $280.00 ($140.00 per set). The UCA had told the target that he would pay him the additional $140.00 at the next transaction. Upon inspection, the documents received by the UCA contained the following information.

•      Simone FRANCO, d/o/b 11-29-72, A138255964, SS# 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

•      Antonio CUNHA, d/o/b 07-16-71, A144208785, SS# 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

## SECOND PURCHASE

16.    On April 19, 2005, the UCA placed a consensually monitored and recorded telephone call to target "Lopes" at 617-347-1083. The purpose of the call was to arrange for the purchase of three sets of fraudulent green cards and social security cards. "Lopes" related that he was busy, and that the UCA should call him the following day.

3

17.    On April 20, 2005, the UCA placed another consensually monitored and recorded telephone call to target "Lopes" at the same number. "Lopes" agreed to meet the UCA at approximately 1300hrs in Quincy, Massachusetts, the following day.

18.    On April 21, 2005, at approximately 1230hrs, the UCA met with ICE agents in Braintree, Massachusetts. The UCA was provided with three green card style photographs bearing the names Paulo FERNANDES (d/o/b 02-24-70), Antonio MOURA (d/o/b 06-19-59) and Sandra MARQUES (d/o/b 12-16-73). The UCA was provided with a digital recording device. Additionally, the UCA was provided with $560.00 in official funds for the purchase of the documents.

19.    At approximately 1256hrs, the UCA placed an unrecorded telephone call to target "Lopes" at 617-347-1083. "Lopes" advised the UCA that he was not able to meet with him. "Lopes" stated that another person named "Cesar" would be calling with directions to another meet location.

20.    At approximately 1302hrs, the UCA received an unrecorded telephone call from a Portuguese-speaking male who identified himself as "Cesar." "Cesar" provided the UCA with directions to 210 Commercial Street, Weymouth, Massachusetts. "Cesar" advised the UCA to call him at 617-283-4004 when he arrived.

21.    At approximately 1333hrs, the UCA arrived at 210 Commercial Street. The UCA placed an unrecorded telephone call to "Cesar" and advised him that he was at the location. At approximately 1335hrs, a Hispanic male exited the building at 210 Commercial Street and entered the UCA vehicle. A video and audio recording device located inside the vehicle was activated at this time. The Hispanic male identified himself as "Cesar." The video shows the UCA handing "Cesar" the aforementioned photographs and biographical information. "Cesar" advised the UCA to call him in 20 minutes for additional information regarding when the documents would be completed. At approximately 1337 hrs, the target exited the UCA vehicle and entered the building at 210 Commercial Street.

4

22.    At approximately 1358hrs, the UCA placed a consensually monitored and recorded telephone call to target "Cesar" at 617-283-4004. "Cesar" related that the documents would be ready at 1630hrs, and that the UCA should meet him at the same location.

23.    At approximately 1453hrs, surveillance observed target "Lopes" arrive at 210 Commercial Street driving a previously identified vehicle bearing Massachusetts registration 22LM26. "Lopes" was observed exiting his vehicle and entering 210 Commercial Street.

24.    At approximately 1555hrs, the UCA received an unrecorded telephone call from "Cesar" who related that the documents were completed.

25.    At approximately 1609hrs, the UCA arrived at 210 Commercial Street.    At approximately 1613 hrs, "Cesar" was observed exiting the building and entering the UCA vehicle. The video and audio recording device located inside the vehicle was activated at this time. The video shows "Cesar" handing the UCA the completed documents. The video also shows the UCA handing "Cesar" the $560.00 in official funds.    At approximately 1615hrs, the target exited the UCA vehicle and entered 210 Commercial Street. The UCA drove to a prearranged debrief location.

26.    Upon being debriefed, the UCA produced the completed documents.    Upon inspection, the documents received from "Cesar" by the UCA contained the following information.

•    Paulo FERNANDES d/o/b 02-24-70, A166297325, SS# 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

•    Antonio MOURA d/o/b 06-19-59, A173060528, SS# 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

•    Sandra MARQUES d/o/b 12-16-73, A172855488, SS# 021-61-528

## THIRD PURCHASE

27.    On May 09, 2005, the UCA placed a consensually monitored and recorded telephone call to target "Cesar" at 617-283-4004. The purpose of the call was to arrange for the purchase of two sets of fraudulent green cards and social security cards. "Cesar" related that he would meet with him at 210 Commercial Street, Weymouth, Massachusetts, at

5

approximately 1000hrs the following day.

28.    On May 10, 2005, at approximately 0930hrs, the UCA met with ICE agents in Braintree, Massachusetts. The UCA was provided with two green card style photographs bearing the names Flavio DEMELO (d/o/b 03-15-1968) and Araujo MASSIMO (d/o/b 07-24-1974). The UCA was provided with a digital recording device. Additionally, the UCA was provided with $280.00 in official funds for the purchase of the documents.

29.    At approximately 1000hrs, the UCA arrived at 210 Commercial Street. The UCA placed an unrecorded telephone call to "Cesar" and advised him that he was at the location. At approximately 1003hrs, "Cesar" was observed exiting the building at 210 Commercial Street and entering the UCA vehicle. The UCA handed "Cesar" the aforementioned photographs and biographical information. "Cesar" advised the UCA that the documents would be completed at 1200hrs. At approximately 1004hrs, the target exited the UCA vehicle and entered the building at 210 Commercial Street.

30.    At approximately 1131hrs, the UCA arrived at 210 Commercial Street. The UCA placed an unrecorded telephone call to "Cesar" and advised him that he was at the location. At approximately 1145hrs, target "Lopes" was observed exiting the building and entering the UCA vehicle. The video and audio recording device located inside the vehicle was activated at this time. The video shows "Lopes" handing the UCA the completed documents. The video also shows the UCA handing "Lopes" the $280.00 in official funds. At approximately 1146hrs, the target exited the UCA vehicle and entered 210 Commercial Street.

31.    On May 27, 2005, I received telephone subscriber information relating to the cellular telephone 617-283-4004. The subscriber is listed as Gilberto L. NAGIME at 530 Willard Street Apt. #101 Quincy, Massachusetts. An RMV query confirmed the name and address, and revealed that the middle initial stands for "Lopes." The UCA has viewed the registry photograph and positively identified him as the individual known as "Lopes".

32.    In sum, I have received a total of seven (7) documents from the above-mentioned

6

purchases. I have reviewed the documents and have determined that they are counterfeit identification documents. A review of records of ICE and Social Security Administration reveals that the green card and SSANC numbers are either invalid, or belong to an individual other than the person listed on the documents.

## CONCLUSION

33.    Based on the foregoing information, I believe probable cause exists to conclude that Gilberto Lopes NAGIME and Cesar LNU did knowingly and without lawful authority, transfer false identification documents, in violation of Title 18 U.S.C. Section 1028(a)(2), and did use and sell, as true and genuine, false and forged documentary evidence required or authorized by law relating to the registry of aliens in false naturalization, citizenship and registry documents in violation of Title 18 U.S.C. Section 1426(b).

Randy R. Reeves
Special Agent
Immigration & Customs Enforcement

Subscribed and sworn before me this 17 day of June, 2005
@ 12:45 PM

Marianne B. Bowler

Marianne B. Bowler
United States Magistrate Judge

7